UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT W. CUMMINGS,

               Plaintiff,                  No. 12-cv-14846

vs.                                       Hon. Gerald E. Rosen

DEAN TRANSPORTATION, INC.,

               Defendant.
_____/

OPINION AND ORDER REGARDING
MOTIONS FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on April 02, 2014

PRESENT:Honorable Gerald E. Rosen
United States District Chief Judge

## I.  INTRODUCTION

This action for an alleged violation of the Americans with Disabilities Act (the

"ADA") and the Michigan Persons with Disabilities Civil Rights Act (the "PWDCRA")

is presently before the Court on the parties' cross-motions for summary judgment.

Having reviewed the parties' briefs, the accompanying exhibits, and the record as a

whole, the Court finds that the pertinent facts and legal contentions are sufficiently

presented in these materials, and that oral argument would not assist in the resolution of

this matter.  Accordingly, the Court will decide this matter "on the briefs."  *See* Eastern

District of Michigan Local Rule 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

Commencing with the 2010-2011 school year, the Crestwood School District in Dearborn Heights, Michigan hired Defendant Dean Transportation, Inc. ("Dean") to provide school bus transportation and maintenance services.  As a result of being retained to provide Crestwood's school bus services, Dean had an opening for a mechanic at the Crestwood garage.

Dean's maintenance mechanics are responsible for repairing and maintaining the school buses, and are also required from time to time to drive those buses.  Pellerito Decl., p. 1.  Accordingly, the mechanic's job opening required that the successful applicant possess or obtain a Commercial Driver's Licence ("CDL") with a School Bus ("S") and Passenger ("P") endorsement, and be able to drive school buses on public roads.  *See* Defendant's Exhibits 3, 4.

Driving is regularly required for purposes of road-testing, trouble shooting, retrieving disabled vehicles and delivering repaired vehicles.  Pellerito Decl., at pp. 1-2. Driving the bus for purposes of transporting students is also required, in an emergency situation, when no regular driver or substitute driver is available. *Id*.,  p. 2. These driving duties are set forth in the job description.  Defendant's Ex. 3; Pellerito Decl., at p. 2. They are also reflected in the job application, and in the contracts that Dean has with its

customers. *See* Defendant's Exhibits 4-5; Pellerito Decl., at p. 2.  All of these duties entail driving school buses on public roads.  Pellerito Decl., p. 2.

Plaintiff Robert Cummings applied for the Dean mechanic's position at Crestwood in the beginning of September 2010, and was offered the job by Dean's hiring manager, Scott Pellerito, conditional upon Cummings passing a Department of Transportation physical.  Cummings is an insulin-dependent diabetic and Scott Pellerito, who wanted to hire Cummings, knew at the time he offered Cummings the job that he was a diabetic. *See* Pellerito Decl., p. 2; Plaintiff's Dep., pp. 92-93; 113.

Unfortunately for Cummings (and Pellerito), the law in Michigan at the time Cummings applied for the job did not allow insulin-dependent diabetics to drive school buses.

CHANGES IN THE MICHIGAN PUPIL TRANSPORTATION ACT

The medical qualification requirements for drivers of commercial vehicles in Michigan are set forth in three sets of statutes and regulations:  (1) the Federal Motor Carrier Safety Act ("FMCSA") Regulations, 49 C.F.R. §§ 391.41-391.49; (2) the Michigan Motor Carrier Safety Act ("MMCSA"), M.C.L. §§ 480.12i-480.12k; and (3) the Pupil Transportation Act ("PTA"), M.C.L. §§ 257.1849-257.1853.  The FMCSA regulations apply to truck drivers who are driving "interstate"; the MMCSA applies to truck drivers who are driving "intrastate"; and the PTA applies to school bus drivers.

Prior to June 22, 2010, an insulin-dependent diabetic was disqualified from

driving a school bus under the PTA unless he could demonstrate that his diabetes was under control.  To show that his diabetes was under control, the driver had to submit a "Physician Survey" form completed by his doctor.  Upon receipt of the completed Physician Survey, the medical examiner was able to issue a "School Bus Driver Certificate of Fitness" (also known as a "blue card").  However, effective June 22, 2010, the PTA was amended to incorporate the medical requirements applicable to drivers of interstate commercial vehicles set forth in the FMCSA regulations, 49 C.F.R. § §391.41-391.49.  *See* M.C.L. § 257.1853(1)(b).  Pursuant to 49 C.F.R. § 391.41(b)(3), an insulin dependent diabetic is not physically qualified to drive a commercial vehicle.  *Id.*[1]  The amendment, however, provided that a school bus driver with diabetes would not be disqualified pursuant to the requirement of  49 C.F.R. § 391.41(b)(3) if (a) he was already employed as a school bus driver on June 22, 2010, or (b) "[t]he driver of the school bus had been granted a waiver under section 3 of the motor carrier safety act of 1963 PA 181, MCL 480.13."  *See* M.C.L.A. § 257.1853(b)(i), (ii) (West 2010).

Under Section 3 of the MMCSA, M.C.L. § 480.13, the Motor Carrier Safety Appeal Board has the authority to grant applications for waivers from medical

---

[1]  49 C.F.R. § 391.41(b)(3) provides:

(b) A person is physically qualified to drive a commercial motor vehicle if that person --

* * *

(3) Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control[.]

4

requirements of 49 C.F.R. § 391.41.  However, when the PTA was amended in June of

2010 to incorporate the requirements of the FMCSA regulations, Section 5 of the

MMCSA, stated, "This act and the rules promulgated under this act, do not apply to a

school bus as defined in the pupil transportation safety act, 1990 PA 187 MCL 257.1801

to 257.1877...." M.C.L. § 480.15(8) (West 2010).  Thus, while the Appeal Board had

authority to grant waivers for intrastate truck drivers, it did not have authority to issue

waivers for school bus drivers.  This apparent oversight in the law was not addressed by

the Michigan legislature until mid-2011.

On June 29, 2011, a bill was introduced to amend the MMCSA to give the Appeal

Board the authority to issue waivers for school bus drivers.  According to the House

Floor Summary of 2011 PA 156:

> The bill [HB 4360] would amend the Motor Carrier Safety Act to make an
> exception to the provision that the Act does not apply to a school bus under
> the Pupil Transportation Safety Act.
>
> Specifically, the Motor Carrier Safety Act states that the Act and the rules
> promulgated under it do not apply to a school bus as defined in the Pupil
> Transportation Safety Act.  Under the bill, the Motor Carrier Safety Act and
> the rules promulgated under it would not apply to a school bus except for
> the purpose of granting a diabetes-related waiver in accordance with
> Section 53 of the Pupil Transportation Act (which prescribes minimum
> qualifications for school bus drivers).

HB 4360, Floor Summary (June 29, 2011) [Defendant's Ex. 17]; *see also* Testimony of

Nathan Rowen, Member of the Michigan Association for Pupil Transportation on HB

4360 before the Michigan House of Representatives, Committee on Transportation ("HB

5

4360 provides an avenue to allow the pupil transportation industry in Michigan to widen

job opportunities to job seeking individuals with diabetes. . . .  HB 4360 makes a

complimentary amendment to the Motor Carrier Safety Act to allow waivers by the

Michigan State Police and the Motor Carrier Safety Appeal Board for certain physical or

medical qualifications.") [Defendant's Ex. 18.]

HB 4360 passed, and on September 27, 2011, an act amending Section 5 of the

MMCSA was entered into law and given immediate effect.  *See* 2011 Mich. Legis. Serv.,

P.A. 156 (H.B. 4360) (West).  The amended statute states in relevant part:

> Except for the purpose of granting a waiver in accordance with section 53
> of the pupil transportation act, 1990 PA 187, MCL 257.1853, this act and
> the rules promulgated under this act do not apply to a school bus as defined
> in the pupil transportation act, 1990 PA 187, MCL 257.1801 to
>  257.1877 . . . .

M.C.L. §480.15(7) (West 2011).[2]

## PLAINTIFF WAS NOT PHYSICALLY QUALIFIED FOR THE BUS DRIVER JOB

Plaintiff Cummings went to the Delta Medical Center on September 2, 2010 for

his physical.  During the intake process Cummings indicated that he was an insulin

dependent diabetic.  *See* Defendant's Ex. 6.  The doctor who was on duty that day, Dr.

Kizinger, apparently was not aware of the changes that had been made to the PTA and he

gave Cummings one of the obsolete "Physician Survey" forms to be completed by his

---

[2] To accommodate changes made thereafter in other subsections of Section 5 of
the MMCSA, minor changes (not relevant in this case) were also later made to this sub-
section, and it was renumbered as subsection (6).  *See* M.C.L. § 480.15(6) (West 2013).

6

primary care physician.  *See* Defendant's Ex. 7.  Cummings emailed the form back to Delta on September 3, 2010.

Shortly thereafter, Dean's Human Resources Department learned that Cummings was an insulin-dependent diabetic, and, therefore, informed Mr. Pellerito that he could not hire Plaintiff.  [Pellerito Decl., p. 2; Troy Scott Decl., p. 2]  When Pellerito learned of this, hoping that a second physical would "fix the problem," he arranged for a second physical at the Concentra Medical Center.  [Pellerito Decl., p. 2.][3]

On September 8, 2010, Cummings went to the Concentra Medical Center for a second physical.  During the intake process, he again reported that he was an insulin dependent diabetic.  *See* Defendant's Ex. 8.  The doctor who conducted the physical, Dr. Galus, was familiar with the June 2010 changes in the law, but he did not notice that Cummings had checked the insulin-dependent box on the medical history form. Therefore, finding Cummings to be otherwise in good health, Dr. Galus issued him a medical certificate.  Galus Dep., p. 20.  When his mistake was brought to his attention, Dr. Galus contacted both Dean and Cummings and informed them that the medical certificate was "cancelled" and "not valid."  *See* Exhibits 9-10; Galus Dep., p. 38.

On September 13, 2010, Cummings spoke with Mr. Pellerito regarding the possibility of obtaining a "waiver" of the diabetes disqualification from the Appeal

---

[3]  Under the pre-June 2010 version of M.C.L. § 257.1853, an employer who had concerns about an employee's physical qualifications could request a second physical. *See* M.C.L. § 257.1853(1)(c) (West 2010).

7

Board.  Pellerito Decl., p. 3.  Mr. Pellerito has a diabetic brother-in-law, who is an "intrastate" truck driver who had obtained such a waiver.  *Id.*  This caused Pellerito to question why Cummings could not obtain a waiver, as well.  *Id.*

 Pellerito, therefore, contacted the Michigan State Police.  *Id.*  Inspector Randy Coplin of the State Police advised Pellerito that a waiver was available for an intrastate truck driver but was not available for a school bus driver.  *Id.*  Pellerito then conveyed the information to Cummings, *id.,* and the job offer Pellerito had made to Cummings on behalf of Dean was officially withdrawn.

With respect to whether a "waiver" was available, Plaintiff claims that he received information from Inspector Coplin that was different than the information provided by Scott Pellerito.  *See* Complaint ¶¶ 17-19.  According to Cummings, after Pellerito told him what Inspector Coplin had said, he called Coplin himself.  *Id.* He contends that the Inspector informed him that there was no prohibition against hiring him because he is a diabetic; Coplin even sent him the forms required when requesting a medical waiver.  *Id*. at ¶ 18.

In his deposition, however, Cummings admitted that his discussions with Inspector Coplin were in reference to "truck drivers," not "school bus drivers." Cummings did not disclose to Coplin the fact that he was applying for a position that would require him to drive a "school bus." Cummings Dep., pp. 212-13.  Inspector Coplin never told  Cummings that "the waiver process was available to persons who were

applying for a job that would require them to drive a school bus," as opposed to a job that would require them to drive a semi-truck.  *Id*. at 213.  Based on what Inspector Coplin said, it was Cummings' understanding that "the waiver application process applied to people who were applying for jobs that would require them to drive semi-trucks," as opposed to persons who were applying to drive a school bus. *Id*. at p. 214.

THE PERSON HIRED FOR THE JOB

After withdrawing the job offer made to Cummings, Dean hired Michael Johnson for the Lead Mechanic position at Crestwood.   *See* Michael Johnson Decl., p 1.  Mr. Johnson has been trained to drive school buses, and possesses a CDL, with an S and P endorsement.  *Id.* at p. 1.  He also possess a current "Medical Examiner's Certificate," verifying that he meets all physical qualifications to be a bus driver.  *Id*.

In the course of his mechanic's duties with Crestwood, Mr. Johnson has been regularly required to drive school buses for road testing and other purposes. *Id*. at p. 2. Due to a temporary "driver shortage" this past school year, Mr. Johnson also drove a school bus with children on board.  *Id*.  Plaintiff does not dispute that mechanics are required to drive vehicles for  purposes of "testing the repair work or maintenance work" and "for purposes of trouble shooting.  Cummings Dep., p.  33.)  He testified that he would "expect that a mechanic, who has made a repair to the brakes of a commercial vehicle, would road test that vehicle before returning it to service."  *Id*.  In his experience, "mechanics are sometimes required to pick up disabled vehicles and drive them back to

9

the shop" and are sometimes "required to deliver vehicles to other locations" after they

have been "repaired."  *Id*. at 33-34.

## III.  <u>DISCUSSION</u>

### A.   <u>APPLICABLE STANDARDS</u>

Summary judgment is proper if the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule

56[] mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548,

2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a

light most favorable to the nonmoving party.  *Pack v. Damon Corp.,* 434 F.3d 810, 813

(6th Cir. 2006).  Yet, the nonmoving party may not rely on mere allegations or denials,

but must "cit[e] to particular parts of materials in the record" as establishing that one or

more material facts are "genuinely disputed."  Fed. R. Civ. P. 56(c)(1).  Moreover, any

supporting or opposing affidavits or declarations "must be made on personal knowledge,

set out facts that would be admissible in evidence, and show that the affiant or declarant

is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Finally, "the mere

existence of a scintilla of evidence that supports the nonmoving party's claims is

insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal

quotation marks, and citation omitted).  The Court will apply the foregoing standards in

deciding the parties' motions for summary judgment in this case.

B.     PLAINTIFF HAS FAILED TO MAKE OUT A LEGALLY COGNIZABLE
       CLAIM OF DISCRIMINATION UNDER THE ADA

       In this lawsuit, Plaintiff claims that by refusing to hire him, and refusing to

provide him a reasonable accommodation during the hiring process, Dean violated his

rights under both the ADA and the PWDCRA. Complaint, ¶¶ 29, 38.

       Under the ADA, "[n]o covered entity shall discriminate against a qualified

individual with a disability because of the disability of such individual in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."

42 U.S.C. § 12112(a).  The ADA definition of the term "discriminate" includes "not

making reasonable accommodations to the known physical or mental limitations of an

otherwise qualified individual with a disability who is an applicant or an employee, unless

such covered entity can demonstrate that the accommodation would impose an undue

hardship on the operation of the business of the covered entity."  *Id*. at § 12112(b)(5).

       To make out a claim of discrimination under the ADA, Plaintiff bears the initial

burden of showing that he is disabled and "otherwise qualified" for the position, either

without accommodation from the employer, with an alleged essential job requirement

eliminated, or with a proposed reasonable accommodation. *Kleiber v. Honda of Am. Mfg.,*

*Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to show that the "challenged job criterion is essential" or that the "proposed accommodation will impose an undue hardship upon the employer." *Id*. (internal quotation marks omitted).

Defendant Dean has not disputed that Plaintiff Cummings is disabled; rather Dean argues that Cummings cannot show that he was "otherwise qualified" for the mechanic's position for which he applied.

In order to be "otherwise qualified" for a job, the individual must satisfy the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position. *See* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.3(m). Whether an individual meets the definition of a qualified individual with a disability is to be determined at the time the employment decision was made. *Thoms v. A.B.F. Freight Sys., Inc.*, 31 F. Supp. 2d 1119, 1124 (E.D. Wisc. 1998); 29 C.F.R. § 1630, app. § 1630.2(m).

"Essential functions" are "the fundamental job duties of the employment position," but do "not include the marginal functions of the position." 29 C.F.R. § 1630.3(n)(1). Whether a particular job function is essential is evaluated on a case-by-case basis by examining a number of factors. *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1258 (11th Cir. 2007). Among the relevant factors is "[t]he employer's judgment as to which functions are essential." 29 C.F.R. § 1630.3(n)(3)(i). The

12

employer's judgment is entitled to substantial weight in the calculus.  *Id.*; *see also*

*Knutson v. Schwan's Home Serv., Inc*., 711 F.3d 911, 914 (8th Cir. 2012) ("The

employer's judgment about an essential job function 'is considered highly probative.'"

(Citation omitted).)  Other relevant factors include a written job description prepared

before advertising or interviewing applicants for the job; the amount of time spent on the

job performing the function; the consequences of not requiring the employee to perform

the function; the work experience of past incumbents; and the current work experience of

employees in similar jobs.  *Keith v. Cnty. of Oakland*, 703 F.3d 918, 925-26 (6th Cir.

2013); *see generally* 29 C.F.R. § 1630.3(n)(3).

     Further, compliance with DOT safety regulations is an essential function of the job

for a commercial driver.  *King v. Mrs. Grissoms Salads, Inc*., 1999 WL 552512 (6th Cir.

1999); *see also Prado v. Continental Air Transp. Co.*, 982 F. Supp. 1304, 1308

(N.D.Ill.1997) (holding that because the plaintiff lacked a medical certification, he was

never qualified for the shuttle bus driver position).  *See also Bay v. Cassens Transport

Co*., 212 F.3d 969, 974 (7th Cir.2000) ("Under applicable DOT regulations, [the

defendant] was not allowed to permit [the plaintiff] to resume driving until he produced a

copy of a doctor's certificate indicating he was physically qualified to drive, ... and

nothing in the ADA purports to change that obligation."); *Myers v. Hose*, 50 F.3d 278,

282–85 (4th Cir.1995) (holding that a diabetic bus driver subject who failed a DOT

medical examination was unable to perform the job's essential functions); *Chandler v.*

13

*City of Dallas*, 2 F.3d 1385, 1394–96 (5th Cir.1993) (holding, based on DOT regulations, that diabetic bus drivers and visually impaired bus drivers were not qualified for the job). *Thompson v. Heiner's Bakery*, 2012 WL 1835709 at *3 (W.D. Va. 2012) (truck driver with heart condition who failed a DOT physical not able to perform essential function of job and there was "no accommodation, reasonable or otherwise, [defendant] can offer [plaintiff] that would enable him in that endeavor -- the DOT regulations flatly prevent it.")

An individual who cannot perform the essential functions of a job is not qualified, and in such cases, the ADA does not come into play. *Dietelbach v. Ohio Edison Co.*, 1 F. App'x 435, 436-37 (6th Cir. 2001).

In this case, Plaintiff was applying for a "mechanic" position, but he was required to drive school buses as a regular part of his job. This is evident not only from the application and the job description, but also is evident in Dean's customer contracts and the actual practices at Dean. Indeed, even Plaintiff himself admits that driving the vehicles worked on is a regular part of a mechanic's job. To be able to drive a bus required that Plaintiff qualify for and obtain a CDL with the necessary endorsements. The need for a CDL with the requisite endorsements is also evident in the job application, job description and customer contracts.

Where a plaintiff seeking a commercial driving position cannot obtain the required DOT certifications he is not an "otherwise qualified" individual for purposes of the ADA.

14

*See Bay v. Cassens Transp. Co.*, 212 F.3d 969 (7th Cir. 2000); *Graham v. Connies, Inc.*, 173 F.3d 860, 1999 WL 173633 (9th Cir. 1999) (plaintiff not qualified as a commercial driver due to the fact that he was insulin-dependent and could not obtain a CDL); *Ortiz v. Elgin Sweeping Serv., Inc.*, 2011 WL 1930693 (N.D. Ill. 2011) (ADA claim by highway sweeper operator who was discharged because his newly diagnosed diabetes prevented renewal of CDL required for DOT certification was not a qualified individual at the time of his discharge due to his inability to hold a license); *Christopher v. Laidlaw Transit, Inc.*, 899 F. Supp. 1224 (S.D.N.Y. 1995) (insulin-dependent diabetic disqualified from employment a s school bus driver).

    Plaintiff does not dispute that being able to obtain the appropriate licenses may be an essential function of a commercial driving position nor does he dispute that an individual who cannot perform the essential functions of a job is not a qualified individual for purposes of the ADA.  However, Plaintiff  argues that Defendant's withdrawal of its offer of employment due to his inability to qualify for a CDL was not lawful because being able to drive a school bus is not an essential function of a bus mechanic.  This same argument was made by the plaintiff in *Murphy v. United Parcel Serv.*, 946 F. Supp. 872 (D. Kan. 1996), *aff'd*, 141 F.2d 1185 (10th Cir. 1988), *aff'd,*, 527 U.S. 516 (1999).

    In *Murphy*, the plaintiff was working for UPS as a mechanic.  The UPS job description for a mechanic stated that "essential functions include a commercial driver's

15

license, meeting DOT regulations and operating a standard transmission."   496 F. Supp.

at 875.  During the course of his employment, Murphy took a physical for his DOT

certification.  *Id.*  Despite having high blood pressure, Murphy was issued a DOT health

card by the testing clinic.  *Id.*  Based on his high blood pressure, Murphy should have

been disqualified and not issued a DOT health card.  A month later, while reviewing

medical records, the UPS medical supervisor discovered that Murphy's blood pressure

was above the DOT standard and that the DOT health card had been issued "in error."

*Id.*  Two weeks later, Murphy's blood pressure was tested again but it was still above the

DOT standard.  *Id.*  Consequently, UPS terminated his employment.

Murphy sued claiming, among other things, that "driving trucks" was not an

"essential function" of his job as a mechanic, and, therefore, his employer was not

entitled to terminate his employment based on his inability to obtain DOT certification.

The court rejected Murphy's argument, out of hand, stating:

> The court is satisfied that no rational fact finder could conclude that driving
> the vehicles in both road tests or road calls was not an essential function of
> the mechanic's job at UPS.  It takes no stretch of the imagination to believe
> that a mechanic would be expected to check on the efficacy of his repairs.
> One would generally expect a mechanic who has made repairs to the brakes
> of a commercial vehicle would road test his work before returning the
> vehicle to the UPS delivery fleet.  Similarly, delivering, working, and
> retrieving disabled vehicles dos not strike the court as an aberrant
> expectation of an employer such as UPS.

*Id.* at 882-83.

Murphy argued in the alternative that (1) UPS could just assign the essential

16

function of driving to another employee or (2) have allowed him to continue driving on

the erroneously issued DOT certification.  The court rejected those arguments as well:

> As to [plaintiff's] suggestion that the essential function of driving the
> commercial vehicle should have been assigned to another employee, the
> ADA does not impose that obligation on employers.
>
> * * *
>
> Acceptance of [plaintiff's] alternative argument -- that UPS should have
> simply allowed him to continue driving on the erroneously issued DOT
> certification -- would set a dangerous precedent.  Once UPS learned that
> [plaintiff's] DOT certification had been issued in error it could not simply
> overlook that fact.  Placing an uncertified person behind the wheel of one
> of its vehicles would have potentially exposed UPS to civil and criminal
> liability. . . . The ADA does not require an employer to accommodate a
> person's disability by ignoring other duties imposed by law.  Nor has
> [plaintiff] refuted UPS's contention that there are no provisions for
> obtaining a waiver of the DOT blood pressure standards.

*Id.* at 883.

The foregoing demonstrates that Plaintiff in this case cannot make out a claim of

discrimination under the ADA.  It is an essential function of the school bus mechanic's

position Plaintiff sought to be able to legally drive a school bus so that he would be able

to road test, move buses, conduct on-site repairs, and be able to drive school buses on a

substitute basis.  When Plaintiff applied for the mechanic's job at Dean, applicable

Michigan law prohibited insulin-dependent diabetics from obtaining the medical

clearance to drive school buses and, as a result, Plaintiff was disqualified for the job.

Although the law has now changed such that an insulin-dependent diabetic is now able to

obtain a "waiver," Plaintiff's qualifications must be determined at the time he applied for

17

the job.  *See* 29 C.F.R. 1630 app., § 1630.2(m); *Thoms v. A.B.F. Freight Sys., supra.*

When Plaintiff went to the Concentra clinic on September 8, 2010, the doctor issued a medical examiner's certificate by mistake.  Once Dean learned that Plaintiff's DOT certification had been issued in error, "it could not simply overlook that fact." *Murphy*, 946 F. Supp. at 883.  Placing an uncertified person behind the wheel of one of its vehicles would have exposed Dean to both "civil and criminal liability." *Id.*  "The ADA does not require an employer to accommodate a person's disability by ignoring other duties imposed by law." *Id.*

For the foregoing reasons, Defendant's motion for summary judgment will be granted on Plaintiff's ADA discrimination claim in Count I of his Complaint, and Plaintiff's cross-motion will be denied.

C.   PLAINTIFF HAS MADE NO ARGUMENT IN OPPOSITION TO
     DEFENDANT'S REQUEST FOR ENTRY OF SUMMARY JUDGMENT ON
     HIS PWDCRA CLAIM

To establish a *prima facie* case of discrimination under the PWDCRA, a plaintiff must establish: 1) that he is disabled as defined by the PWDCRA; 2) that the disability is unrelated to his ability to perform the duties of her particular job; and 3) that he was discriminated against in one of the ways described in the statute. *Peden v. City of Detroit*, 470 Mich. 195, 204, 680 N.W.2d 857 (2004).

The ADA and PWDCRA "substantially mirror" each other. *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir.2012). Therefore, "claims under both statutes are generally

18

analyzed identically." *Steward v. New Chrysler*, 415 F. App'x 632, 641 (6th Cir.2011).

For the reasons stated above in section III.B of this Opinion with respect to Plaintiff's

ADA claim, Plaintiff Cummings cannot make out a *prima facie* case under the

PWDCRA.  Michigan courts, like the federal courts, have held that where a

driver-employee does not meet federal medical qualifications to drive a commercial

vehicle due to a disqualifying medical condition, he is not able to make out a *prima facie*

case for discrimination under the PWDCRA.  *See, e.g., Cunningham v. USF Holland,

Inc.*, 2013 WL 1748563, at *5 (Mich. Ct. App. April 23, 2013);  *Dep't of Civil Rights ex

rel. Lanphar v. A & C Carriers*, 157 Mich. App. 534, 543, 403 N.W.2d 586, 590 (1987)

(same); *Daily v. Martin Trans. Sys., Inc.*, 2013 WL 5442750 (W.D. Mich. 2013)

(applying Michigan law).  Plaintiff has made no separate argument in support of his

PWDCRA claim.  Therefore, for the reasons stated above, summary judgment will be

entered in favor of Defendant and against Plaintiff on Count II of Plaintiff's Complaint.

CONCLUSION

   For all of the reasons set forth in this Opinion and Order,

   IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment

**[Dkt. # 7]** is GRANTED, and Plaintiff's Motion for Summary Judgment **[Dkt. # 11]** is

DENIED.  Accordingly,

   IT IS FURTHER ORDERED that Plaintiff's Complaint be DISMISSED in its

entirety, with prejudice.

Let Judgment be entered accordingly,


s/Gerald E. Rosen                              
Chief Judge, United States District Court

Dated:  April 2, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 2, 2014, by electronic and/or ordinary mail.

s/Julie Owens                                   
Case Manager, (313) 234-5135